UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY LEE HUGHES,<br><br>    Petitioner,<br><br>    v.<br><br>JEFFERY BEARD,<br><br>    Respondent. | Case No. 14-cv-01302-EMC<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## I. INTRODUCTION

Bobby Lee Hughes filed this *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge part of the sentence he received pursuant to a plea agreement. Respondent has filed an answer to the petition and Mr. Hughes has filed a traverse. For the reasons discussed below, the Court dismisses one claim as untimely filed and denies the other claim on the merits.

## II. BACKGROUND

A. <u>California's Sentence Enhancement For Committing A New Crime While Out On Bail</u>

California Penal Code section 12022.1 provides for a two-year sentence enhancement when a defendant commits a crime while out on bail for another crime. This provision is sometimes called the "on-bail enhancement." Section 12022.1 sets out the methods by which courts can account for the sometimes contingent nature of the underlying (or "primary") offense (e.g., staying the enhancement on the sentence for the current (or "secondary") offense until a conviction occurs for the underlying offense), and the steps to be taken after the underlying

offense is resolved.[1]

Mr. Hughes' federal habeas petition challenges the two-year sentence enhancement he received under California Penal Code section 12202.1 as part of his plea deal. Mr. Hughes challenges the sentence originally imposed as well as the state court's later refusal to vacate the on-bail sentence enhancement when the underlying offense was dismissed.

B.   The No-Contest Plea And Sentencing

On November 1, 2010, Mr. Hughes was charged in Alameda County Superior Court with second degree robbery. The criminal complaint also contained numerous sentence enhancement allegations, including allegations that Mr. Hughes: (a) was on bail in Solano County Case No.

---

[1] At the time Mr. Hughes entered his no-contest plea, California Penal Code § 12022.1 provided, in relevant part:

(a) For the purposes of this section only:

  (1)   "Primary offense" means a felony offense for which a person has been released from custody on bail or on his or her own recognizance prior to the judgment becoming final. . . .

  (2)   "Secondary offense" means a felony offense alleged to have been committed while the person is released from custody for a primary offense.

(b)   Any person arrested for a secondary offense which was alleged to have been committed while that person was released from custody on a primary offense shall be subject to a penalty enhancement of an additional two years in state prison which shall be served consecutive to any other term imposed by the court.

   *   *   *

(d)   Whenever there is a conviction for the secondary offense and the enhancement is proved, and the person is sentenced on the secondary offense prior to the conviction of the primary offense, the imposition of the enhancement shall be stayed pending imposition of the sentence for the primary offense. The stay shall be lifted by the court hearing the primary offense at the time of sentencing for that offense and shall be recorded in the abstract of judgment. If the person is acquitted of the primary offense the stay shall be permanent.

2

1   FCR263076 when he committed the robbery; (b) had suffered five prior convictions for receiving
2   stolen property, first degree burglary, assault with a deadly weapon, and battery on a non-confined
3   person by a prisoner; and (c) had suffered four prior prison terms. *See* Docket No. 14-3 at 2, 9-11.
4           The parties entered into a plea agreement. On February 2, 2012, pursuant to that plea
5   agreement, Mr. Hughes pleaded no contest to the robbery offense and admitted the sentence
6   enhancement allegations that he had suffered one prior serious felony and was on bail at the time
7   of the current offense.[2] The prosecutor described the agreed-upon sentence: "The defendant is
8   going to receive the low term of two years times two, plus the two-year enhancement under
9   12022.1, for a total of six years state prison, which he will be serving at 85 percent. In lieu (sic) of
10  that plea, the other priors will be stricken for purposes of sentencing." Docket No. 14-3 at 15.
11  The court reviewed the rights that Mr. Hughes would be waiving by entering his plea, and he
12  waived them. The prosecutor then stated the factual basis for the plea, and defense counsel
13  accepted it.[3] The court then returned to the sentence:

> THE COURT: The understanding is that you will receive a total of six years in the state prison at 85 percent. You will not be considered for probation. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And you're prepared to do that, correct?

---

[2] At the change-of-plea hearing, it was agreed that Mr. Hughes would admit to having suffered a prior serious felony conviction. At sentencing, however, that provision was modified and Mr. Hughes admitted to suffering a prior prison term rather than a prior conviction. *Compare* 2/1/12 RT 2 *with* 3/6/12 RT 2.

[3] The prosecutor stated the following factual basis for the plea:

> On October 22nd, 2010, the defendant walked into the U.S. Bank inside the Safeway in Dublin, wearing designer sunglasses and a hat, carrying a manila envelope. Defendant approached the teller, handled (sic) the teller a note that said, "No bait, no dye packs." The defendant told her to hand over all the large bills, and the teller's next to her. The teller was frightened, so complied. There was no weapon and the defendant fled. [¶] After an investigation, the defendant was determined and identified by the teller. The defendant was subsequently arrested.

Docket No. 14-3 at 21.

3

1    THE DEFENDANT: Yes.

2 Docket No. 14-3 at 17. Mr. Hughes then entered his plea of no contest to the robbery charge and
3 admitted the two sentence enhancement allegations. *Id.* at 22-23. The prosecutor dismissed the
4 remaining sentence enhancement allegations of prior convictions for purposes of sentencing. *Id.*
5 at 24.

6    Less than three weeks later, Mr. Hughes sent a letter to his lawyer dated February 19,
7 2012, musing about whether a better deal could have been obtained had Mr. Hughes waited and
8 whether Mr. Hughes should try to withdraw his plea. *See* Docket No. 18 at 22-27. His letter
9 plainly shows that he and his attorney had discussed the on-bail enhancement and that Mr. Hughes
10 planned to use the statute to his advantage at the appropriate time, even planning to conceal
11 information from the sentencing judge if advantageous. Mr. Hughes wrote to his attorney:

> I am sending you what I have on P.C. 120122.1. Please review it as well as any other secondary source info you have at your disposal. As I told you, my understanding of the bail enhancement is if I am convicted of the charges in Solano, I cannot be given the 2 extra years. The case in Solano is my "primary offense" and the case at bar is my secondary offense. As long as I am not convicted of a felony in Solano, my offense here will only be 4 years. And that reasoning is why I am taking this deal.
>
> *I believe the sentencing Judge is required to stay the two years pending adjudication of my primary offense, but if he does not, [I] won't say anything as you advised.* But when I get to Solano and resolve that case favorably, what should I do -- file an appeal or a habe[a]s corpus?

21 Docket No. 18 at 26 (emphasis added). In that same letter, Mr. Hughes acknowledged that
22 counsel had informed him that he likely would receive a much lengthier sentence if he went to
23 trial. *Id.* at 25 ("My time isn't bad when you look at the cap -- and you did your duty to relay your
24 honest opinion that I'd end up with close to the 20 years I was facing.")

25    On March 6, 2012, Mr. Hughes was sentenced to a total of six years in prison. As
26 indicated in footnote 2, *supra*, the court and counsel had discussed the sentencing in chambers and
27 determined to make a change to Mr. Hughes' advantage: instead of Mr. Hughes admitting to
28 having suffered a prior serious felony conviction, he would admit to having served a prior prison

4

term for the same conviction; the result of the change was that it would not be a second strike sentence and instead would be a sentence of the same length but calculated differently to impose a one-year enhancement for the prior prison term. Docket No. 14-3 at 29. Mr. Hughes agreed, and admitted that he had served a prior prison term. *Id.* at 29. The six-year term was then imposed, comprised of consecutive sentences of the mid-term of three years for the robbery, one year for the prior prison term sentence enhancement, and two years for the enhancement for committing the robbery while on bail. *Id.* at 29-30.

Mr. Hughes did not appeal.

C.   Post-Sentencing State Court Proceedings

The on-bail enhancement imposed in the Alameda County case discussed above was based on a Solano County case in which Mr. Hughes was charged with burglary and grand theft, *People v. Bobby Hughes*, Solano County Superior Court Case No. FCR263076. Docket No. 14-5 at 21 ("the "Solano County case"). The Solano County case was dismissed on October 2, 2012, in the interest of justice in view of a finding that Mr. Hughes had been "prosecuted in Alameda County for the same offense." Docket No. 14-5 at 21. (That Alameda County prosecution is separate from the Alameda County robbery case at issue here.) Mr. Hughes allegedly received a copy of the Solano County Superior Court's order dismissing the Solano County case "[s]ometime in March or early April 2013." Docket No. 1-1 at 3.

On June 3, 2013, Mr. Hughes filed a petition for writ of habeas corpus in the Alameda County Superior Court, contending that the on-bail enhancement portion of his sentence was infirm because the offense for which he was on bail had been dismissed. The Alameda County Superior Court denied the petition on July 17, 2013 as untimely and on the merits. Docket No. 14-5 at 8. As to the latter, the court wrote:

> Even if timely, the Petition fails to state prima facie claims for relief. A defendant may be estopped from complaining about a sentence, even if it is unauthorized, if the defendant agreed to it as part of plea agreement. (*People v. Hester* (2000) 22 Cal. 4th 290, 295.) Petitioner negotiated a plea providing for a 6-year sentence and was sentenced pursuant to that plea bargain. "[D]efendants who have received the benefit of their bargain should not be allowed to trifle with the courts by attempting to better the bargain through the

5

1  appellate process. [Citations.]" (*Hester, supra*, 22 Cal.4th at p. 295.)

2  Docket No. 14-5 at 8 (alterations in original).

Mr. Hughes then filed a petition for writ of habeas corpus in the California Court of Appeal on August 14, 2013. The court ordered and received an informal brief from respondent, and received a reply from Mr. Hughes. On October 4, 2013, the petition was denied without discussion. Docket No. 14-5 at 9.

Mr. Hughes then filed a petition for writ of habeas corpus in the California Supreme Court on November 20, 2013. The petition was denied without discussion on February 11, 2014. *See* Docket No. 14-6 at 2.

This action was filed on March 20, 2014. The petition is dated March 14, 2014, and the envelope in which it arrived has no readable postmark. Applying the prison mailbox rule, the Court assumes for present purposes that Mr. Hughes gave his petition to prison officials to mail on the date he signed it, and deems the petition to have been filed as of March 14, 2014. *See Stillman v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003) (mailbox rule provides that *pro se* prisoner's filing of a document is deemed to have occurred when he gives it to prison officials to mail to the court).

### III. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action for a writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the petition concerns the conviction and sentence of a person convicted in Alameda County, California, which is within this judicial district. 28 U.S.C. §§ 84, 2241(d).

### IV. STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The Antiterrorism And Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of

6

the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" *Id.* at 409.

## V.  DISCUSSION

A.  The Claim(s) Asserted

In his federal petition for writ of habeas corpus, Mr. Hughes alleges that his right to due process was violated when the "state courts refused to adhere to state statutory law, as well as law of the California Supreme Court, requiring petitioner's bail violation enhancement conviction and sentence be vacated where petitioner had not suffered a requisite felony conviction as to the 'primary offense' within the meaning of Penal Code section 12022.1" Docket No. 1-1 at 5. He argues that, "for the bail violation enhancement, Penal Code § 12022.1, to be sustained, [he had] to be convicted of a felony," and the October 2, 2012 dismissal of the Solano County case meant that "no felony conviction came to fruition as to the 'primary offense,' and thus, petitioner's bail violation enhancement conviction and sentence must be ordered vacated." Docket No. 1-1 at 6. He further argues that, at the time the plea agreement was reached, the parties anticipated that he

7

would be convicted in the Solano County case, and that California Penal Code § 12022.1 "permits the court presiding over the adjudication of the 'secondary offense,' to accept a bail violation plea, and impose a two year term. However, the two year term is to be 'stayed,' pending conviction as to the 'primary offense.'" Docket No. 1-1 at 7.

As this Court understands it, Mr. Hughes' petition urges two analytically distinct claims. First, the petition appears to assert that the sentence was improper from the outset because the on-bail sentence enhancement should have been stayed until the Solano County case was resolved. *See id.* Second, the petition appears to assert that, once the Solano County case was dismissed, due process required the state courts to dismiss the two-year on-bail sentence enhancement. *See id.* at 5-6. As will be explained below, the first claim is untimely and the second claim does not support federal habeas relief.

B.     The Habeas Statute of Limitations Bars Claim One

Petitions filed by prisoners challenging noncapital state convictions or sentences must be filed within one year of the latest of the date on which: (1) the judgment became final after the conclusion of direct review or the time has passed for seeking direct review; (2) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the factual predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1).

The one-year statute of limitations period in § 2244(d)(1) applies to each claim in a habeas petition on an individual basis. *See Mardesich v. Cate*, 668 F.3d 1164, 1169-71 (9th Cir. 2012). In the usual case, all the claims in a petition are for alleged errors at trial or sentencing and all the claims receive the same starting date for the limitations period based on the date the conviction becomes final. However, when, as here, one or more claims arise after the conviction becomes final, the rule from *Mardesich* becomes critical. *Mardesich* rejected the view that all claims in a petition "may proceed so long as at least one of them is timely." *Id.* at 1169, 1171. In other words, if a claim arises long after a conviction is final -- due to a newly recognized constitutional

right or due to the belated discovery of the factual predicate of a claim -- that claim might have a later starting date and be timely, but its timeliness does not open the door for the presentation of other claims that are otherwise time-barred. This court therefore must consider whether each of the two claims in Mr. Hughes' habeas petition is timely. The timeliness of one claim will not necessarily mean the other claim is timely. *See id.* at 1170-71.

### 1. Claim One Is Untimely

The limitations period for the claim that the sentence originally imposed violated due process began when the judgment became final upon "the expiration of the time for seeking [direct] review." 28 U.S.C. § 2244(d)(1)(A). In California, a criminal defendant must file an appeal within 60 days "after the rendition of the judgment or the making of the order being appealed." Cal. R. Ct. 8.308(a). The rendition of judgment is the oral pronouncement, i.e., the sentencing date. *See* Cal. Penal Code § 1202; *People v. Thomas*, 52 Cal. 2d 521, 529 n.3 (Cal. 1959). Mr. Hughes was sentenced on March 6, 2012. *See* Docket No. 14-3 at 33. Mr. Hughes had until May 5, 2012 to file an appeal. Mr. Hughes did not appeal, so his judgment became final on May 5, 2012, when the time for seeking direct review expired. The one-year limitations period began the next day, and the presumptive deadline for Mr. Hughes to file his federal petition therefore was May 5, 2013.

The Court does not use the alternative starting date for the limitations period of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," § 2244(d)(1)(D), for the claim that the original sentence violated due process because that date is earlier than the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," § 2244(d)(1)(A). When § 2244(d)(1)(D) applies, the limitations period begins "when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance." *Hasan v. Galaza*, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001) (quoting *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)). Here, Mr. Hughes knew as of February 19, 2012 that the sentence for the on-bail enhancement would not but (according to his claim) should be stayed pending a resolution of the Solano County case. On that date, he wrote to his attorney

1  that he "believe[d] the sentencing Judge is required to stay the two years pending adjudication" of
2  the Solano County case. Docket No. 18 at 26. When he was sentenced on March 6, 2012, Mr.
3  Hughes knew the important facts, i.e., that the sentence imposed was six years and the two-year
4  portion of that sentence attributable to the on-bail sentence enhancement had not been stayed.
5  Thus, using § 2244(d)(1)(D) would result in a March 6, 2012 starting date for the limitations
6  period, whereas using § 2244(d)(1)(A) results in the later starting date of May 6, 2012. Section
7  2244(d)(1) provides that the limitations period runs "from the latest of" the four possible starting
8  dates which, for Mr. Hughes' first claim, was the date on which the conviction became final upon
9  the expiration of the time for seeking direct review. *See* 28 U.S.C. § 2244(d)(1) (limitations
10 period runs "from the latest of" the four possible starting dates).

11 The one-year limitations period is tolled for the "time during which a properly filed
12 application for State post-conviction or other collateral review with respect to the pertinent
13 judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Here, Mr. Hughes' first state habeas
14 petition was not filed until June 3, 2013, almost a month after the one-year limitations period
15 expired on May 5, 2013. The state habeas petitions, all having been filed after the expiration of
16 the one-year habeas statute of limitations period in 28 U.S.C. § 2244(d)(1), had no tolling effect.
17 *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d) does not permit
18 the reinitiation of the limitations period that has ended before the state petition was filed," even if
19 the state petition was timely filed).

20 Even if Mr. Hughes could show that he sent his first state habeas petition to the Alameda
21 County Superior Court before the expiration of the one-year statute of limitations period, his
22 petition would be untimely because the Alameda County Superior Court rejected that petition as
23 untimely (as well as on the merits), with a citation to *In re Robbins*, 18 Cal. 4th 770, 780 (1998),
24 and other cases. *See* Docket No. 14-5 at 8. A *Robbins* citation is the shorthand used by California
25 courts to signal that a petition has been rejected as untimely. *See Thorson v. Palmer*, 479 F.3d 643,
26 645 (9th Cir. 2007) (denial of petition with citation to *Robbins* at the page on which opinion
27 discusses timeliness determinations was clear denial on timeliness grounds). "When a
28 postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of

10

§ 2244(d)(2)." *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (citing *Carey v. Saffold*, 536 U.S. 214, 226 (2002)). As in *Pace*, "[b]ecause the state court rejected petitioner's [postconviction] petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under §2244(d)(2)." *Id.* at 417; *see also Lakey v. Hickman*, 633 F.3d 782, 786 (9th Cir. 2011) (no statutory tolling for petition rejected as untimely by California Supreme Court because petition was not "properly filed"; fact that California's timeliness rule frequently requires consideration of diligence does not matter); *Thorson*, 479 F.3d at 645 (denial of petition with citation to *Robbins* at the page on which opinion discusses timeliness determinations was clear denial on timeliness grounds and therefore petition was neither "properly filed" nor "pending"). The Alameda County Superior Court's denial of Mr. Hughes' habeas petition as untimely strips that petition of any tolling effect. He thus is not entitled to statutory tolling for the days during which that petition was awaiting decision in the Alameda County Superior Court. Mr. Hughes also is not entitled to any tolling for his later state habeas petitions in the California Court of Appeal and the California Supreme Court because their summary denials created a presumption, unrebutted by Mr. Hughes, that those courts agreed with the lower court's determination on the timeliness question. *See Curiel v. Miller*, 780 F.3d 1201, 1203-04 (9th Cir. 2015); *id.* at 1204 (when the California Supreme Court denies the petition summarily, it is presumed that court agreed with the lower court's determination on the timeliness question unless "strong evidence" rebuts this presumption). In short, Mr. Hughes receives no statutory tolling for his state court habeas efforts.

To be sure, the one-year limitations period may be equitably tolled because § 2244(d) is not jurisdictional. *Holland v. Florida*, 560 U.S. 631, 645 (2010). '[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006). Mr. Hughes does not show any basis for equitable tolling of the limitations period. He does not show that any extraordinary circumstance stood in the way of him challenging the conviction and sentence originally imposed, and does not show that he was "pursuing his rights diligently" to challenge that conviction and sentence, as is required for

11

equitable tolling. *Holland*, 560 U.S. at 649.  He fails to identify even a single step he took to pursue collateral relief after the sentence was imposed before he received the court order dismissing the Solano County case.  In fact, his February 19, 2012 letter to his attorney suggests a purposeful strategy not to alert the state court at the time of the sentencing that the on-bail enhancement needed to be stayed.  Mr. Hughes has not satisfied either requirement for equitable tolling.  He therefore is not entitled to any equitable tolling of the limitations period.

Mr. Hughes' claim that the sentence originally imposed violated due process was not filed until March 14, 2014, more than ten months after the expiration of the habeas statute of limitations period.  The claim challenging the sentence originally imposed is dismissed as untimely.

### 2. Claim Two Is Not Untimely

Mr. Hughes' second claim has a different starting date for the limitations period.  His second claim is that his right to due process was violated when the state courts refused to vacate the on-bail sentence enhancement after the Solano County case was dismissed.  He could not have known of the factual predicate for that claim before the dismissal occurred, and asserts that he did not learn of the dismissal until March or April 2013.  The limitations period for the second claim began on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D).  Under this subdivision, the limitations period begins "when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance."  *Hasan*, 254 F.3d at 1154 n.3.  Mr. Hughes learned the essential fact that the Solano County case had been dismissed in March or April 2013.  There is no evidence that he learned the essential fact before March 14, 2013, and that appears to make his federal petition filed on March 14, 2014 timely, without the need for any statutory or equitable tolling.  Even if he received notice of the dismissal of the Solano County case in the first two weeks of March 2013, he would be entitled to equitable tolling for the time he was seeking relief in the state courts because he was diligently pursuing his rights and exhaustion was a necessary precondition to the filing of the claim in federal court.  *See Holland*, 560 U.S. at 655 (litigant seeking equitable tolling must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.")

The second claim in the petition is not barred by the statute of limitations. The Court therefore turns to the merits of that second claim.

C.     Claim Two:  State Court's Refusal To Vacate On-Bail Sentence Enhancement

In his second claim, Mr. Hughes contends that the state court violated his due process rights when it "refused to adhere to state statutory law, as well as the law of the California Supreme Court" that required his on-bail sentence enhancement to be vacated after the Solano County case was dismissed. Docket No. 1-1 at 5. As mentioned in the "Background" section above, the Alameda County Superior Court rejected Mr. Hughes' habeas petition because, "[e]ven if timely, the Petition fails to state prima facie claims for relief." Docket No. 14-5 at 8. The superior court further explained that Mr. Hughes was estopped from trying to better his position through post-conviction complaints about the sentence for which he had bargained and obtained the benefit of his bargain. *Id.* The superior court decision is the last reasoned decision from a state court and therefore is the decision to which 28 U.S.C. § 2254(d)(1) is applied. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005).

The alleged state law error of not vacating the on-bail portion of his sentence once the Solano County case was dismissed cannot support federal habeas relief. The Supreme Court has repeatedly held that the federal habeas writ is unavailable for violations of state law or for alleged error in the interpretation or application of state law. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Notwithstanding the unavailability of federal habeas relief for a state law error, relief might be available if that same error amounted to a due process violation.

It is clearly established law that "the sentencing process . . . must satisfy the requirements of the Due Process Clause." *Gardner v. Jones*, 430 U.S. 349, 358 (1977). For example, due process requires that a sentence not be predicated on materially untrue information, *Townsend v. Burke*, 334 U.S. 736, 740-41(1948) (due process was offended by court's careless misunderstanding of defendant's criminal history used for sentencing purposes), but due process does not impose the same evidentiary requirements at sentencing as demanded for trial. *See*

*Williams v. New York*, 337 U.S. 241, 250-51 (1949) (judge's imposition of the death penalty after he considered information in a probation department report and other sources not presented at trial did not offend due process). "We must recognize that most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination."

A misapplication of a state's sentencing law will violate due process only if the misapplication was arbitrary or fundamentally unfair. "Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." *Christian v. Rhode,* 41 F.3d 461, 469 (9th Cir. 1994). There is no fundamental unfairness here for several reasons.

First, in denying the petition seeking to vacate the on-bail enhancement, the superior court articulated a reasonable legal basis for the decision, i.e., having accepted the benefit of the plea bargain, Mr. Hughes was estopped from trying to undo part of that bargain. The superior court determined that, as a matter of state law, Mr. Hughes was estopped from challenging his sentence because he had received the benefit of the plea bargain. This court accepts that determination of state law. *See Bains v. Cambra*, 204 F.3d 964, 972 (9th Cir. 2000) ("federal court is bound by the state court's interpretation of state law"). Mr. Hughes accepted the benefits of the plea agreement and chose not to object to the calculation of the prison sentence at the time it was imposed. Mr. Hughes has not shown that the state court's use of an estoppel theory to reject his claim was contrary to or an unreasonable application of clearly established federal law from the Supreme Court. In fact, such a theory is consistent with the general rule in federal courts that failure to object to an error when made can result in forfeiture of a claim of error. "If a litigant believes that an error has occurred (to his detriment) during a federal judicial proceeding, he must object in order to preserve the issue. If he fails to do so in a timely manner, his claim for relief from the error is forfeited. 'No procedural principle is more familiar to this Court than that a . . . right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'" *Puckett v. United States*, 556 U.S. 129, 134 (2009) (quoting *Yakus v. United States,* 321 U.S. 4141 (1944)) (defendant's failure to object to the

government's alleged breach of the plea agreement when the government failed to recommend a downward departure was forfeited and therefore subject to the stricter standards of Federal Rule of Criminal Procedure 52(d)'s plain error rule). In any event, Mr. Hughes has not pointed to any U.S. Supreme Court precedent clearly establishing that a state court's use of an estoppel theory under these circumstances violates the federal constitution.

Second, while it is true that due process forbids a sentence in excess of that allowed by statute (*see Ex parte Lange*, 18 Wall. 163, 176-78 (1874); *Hicks v. Oklahoma*, 447 U.S. 343, 347 (1980); *Townsend v. Burke*, 334 U.S. 736, 741 (1948)), the Supreme Court has suggested that plea agreements are contractual in nature, which would include a freedom to agree upon enforceable terms of the contract. "Although the analogy may not hold in all respects, plea bargains are essentially contracts," and are evaluated under contract principles. *Puckett v. United* States, 556 U.S. 129, 137 (2009); *see Ricketts v. Adamson*, 483 U.S. 1, 12 (1987) (defendant's post-sentencing refusal to testify as required by plea agreement removed the double jeopardy bar to his prosecution for a greater offense; "[t]he parties could have struck a different bargain, but permitting the State to enforce the agreement the parties actually made does not violate the Double Jeopardy Clause"); *Santobello v. New York*, 404 U.S. 257, 262 (1971) (applying contractual principles to resolve breach of plea agreement claim); *but see Ricketts,* 483 U.S. at 16 (Brennan, J., dissenting) (law of commercial contracts may be useful as an analogy or point of departure for evaluating plea agreements, but one must keep in mind that plea agreements are constitutional contracts with different values).

Mr. Hughes has not identified any Supreme Court holding that plea agreements which are contractual in nature may never stipulate to a sentence that exceeds the statutory maximum. While the Ninth Circuit has held that a guilty plea does not permit the state to impose a sentence in excess of state law despite agreement of the defendant to the sentence, *see Marzano v. Kincheloe*, 915 F.2d 549, 552 (9th Cir. 1990), *Marzano* does not help Mr. Hughes because it is circuit-level precedent. The AEDPA requires this court to evaluate the state court's decision with reference only to "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1).

Specifically, there is no Supreme Court precedent holding there is a Due Process violation where the total term imposed pursuant to the plea agreement is actually within the statutory maximum that could have been imposed had the sentence been calculated differently, based on the same crimes and enhancements to which the petitioner pled. Mr. Hughes received a total term of six years upon his no-contest plea. He does not dispute that the sentencing court could have imposed the same six-year term based on the same crime to which he pled no-contest and the same enhancements he admitted. Second degree robbery "is punishable by imprisonment in the state prison for two, three or five years." Cal. Penal Code § 211(a)(2). If the sentencing court had selected the upper term of five years instead of the mid-term of three years, and had imposed the one-year sentence enhancement for the prior prison term, the sentencing court could have reached a six-year term without need for the two-year on-bail enhancement.[4] In light of the absence of Supreme Court authority prohibiting a plea agreement that permits a sentence that exceeds the statutory maximum for one of its components but not the statutory maximum that could have been imposed based on a different calculation of the sentence based on the same plea, the Alameda County Superior Court's rejection of Mr. Hughes' claim was not contrary to or an unreasonable application of clearly established federal law as set forth by the Supreme Court. "If Supreme Court cases 'give no clear answer to the question presented,' the state court's decision cannot be an unreasonable application of clearly established federal law." *Ponce v. Felker*, 606 F.3d 596, 604 (9th Cir. 2010) (quoting *Wright v. Van Patten*, 552 U.S. 120, 126 (2008)).

Finally, the state court's rejection of Mr. Hughes' claim would have been consistent with the reasoning in *Brady v. United States*. 397 U.S. 742, 756 (1970), where the Supreme Court rejected the argument that a plea was involuntary due to the failure to inform the defendant of a change in the law that did not occur until several years after he entered his plea. As *Brady* explained:

---

[4] Alternatively, based on Mr. Hughes' original admission to the prior conviction sentence enhancement allegation, *see* footnote 2, *supra*, the sentencing court could have imposed a six-year sentence by using the mid-term of three years for the robbery, doubled because it was a second strike due to Mr. Hughes' admission that he suffered the prior conviction.

16

> Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.

*Brady*, 397 U.S. at 756-57. Although *Brady* involved a change in the law instead of the change in facts that occurred in Mr. Hughes' case, the inability to predict the future with certainty does not necessarily undermine the validity of the plea. Although according to Mr. Hughes, the parties entered the plea "anticipat[ing] he would be convicted of a felony" in the Solano County case, Docket No. 1-1 at 7, his plea which was intelligently made was not "vulnerable to later attack" simply because he "did not correctly assess every relevant factor entering into his decision." *Brady,* 397 U.S. at 757.

The superior court's rejection of Mr. Hughes' claim was not an unreasonable application of, or contrary to, any clearly established federal law, as set forth by the U.S. Supreme Court. He is not entitled to federal habeas relief.

D.    A Certificate Of Appealability Will Not Issue

A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling" as to the first claim. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). And, as to the second claim, this is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* Accordingly, a certificate of appealability is **DENIED**.

///

///

///

17

## VI. CONCLUSION

The petition for writ of habeas corpus is **DENIED** on the merits. Mr. Hughes' request for an evidentiary hearing is **DENIED** as unnecessary. The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated: January 12, 2016

_____
EDWARD M. CHEN
United States District Judge